**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

| | | |
|---|---|---|
| **In Re:** | * | |
| | * | |
| **JAMES MICHAEL STEWART,** | * | **Bankruptcy Case No.: 07-10940 PM** |
| | * | **(Chapter 7)** |
| **Debtor.** | * | |
| **STEVEN H. GREENFELD,** | * | |
| **CHAPTER 7 TRUSTEE,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Bankruptcy** |
| **v.** | * | **Adv. Proc. No.: 09-0051-PM** |
| | * | |
| **BRIAN J. BOWERS, et al.,** | * | |
| **Defendants.** | * | **Dist. Ct. Case No. 8:09-cv-02199-MJG** |

# BRIEF OF APPELLANT

# TABLE OF CONTENTS

Statement of the basis of appellant jurisdiction. .................................................................................4

Statement of issues on appeal. ............................................................................................................4

Statement of the Case ........................................................................................................................6

Facts ...................................................................................................................................................7

Argument ...........................................................................................................................................9

   A.  The applicable standard in this case for the granting a dismissal under Rule 12(b)(6)..............................10

   B. The effect of the judgment debtor's Virginia martial property settlement agreement on real property

   located in Maryland. ....................................................................................................................10

   C. The Law of Equitable Rights. ....................................................................................................16

   D. Judgment liens attaching to equitable interests. ..........................................................................20

Conclusion .......................................................................................................................................22

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*, 556 U.S. _____, 129 S.Ct. 1937, 1959, 137 L.Ed.2d 868, 985 (2009) ...................................10

*Bruce v. Dyer*, 524 A.2d 777, 782-783 (Md. 1987)........................................................................................................19

*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)..........................................................................................................10, 18

Coombs v. Jordan, 3 Bland 284, 22 Am. Dec. 236 (1831)..........................................................................................21

Frey v. Frey, supra, 298 Md. at 563-64, 471 A.2d 705................................................................................................12

*Griswold v. Connecticut*, 381 U.S. 479 (1965),.........................................................................................................12

Hartz v. Hartz, 248 Md. 47, 234 A.2d 865 (1967)......................................................................................................12

Herget v. Herget, 77 Md. App. 268, 550 A.2d 382 (1988).........................................................................................12

Himmighoefer v. Medallion Industries, Inc., 487 A.2d 282, 302 Md. 270, 272 (Md., 1984) .............................17

Hollida v. Shoop, 4 Md. 465, 475, 59 Am. Dec. 88 (1853)........................................................................................21

*Jonas v. Logan*, 478 So.2d 410 (Fla.Dist.Ct.App. 1985)............................................................................................19

Levy v. Sherman, 185 Md. at 67-72, 43 A.2d at 27-29 (1945)....................................................................................13

McMechen v. Marman, 8 Gill & J. 57 (1836)..............................................................................................................21

Pumphrey v. Pumphrey, 11 Md. App. 287; 273 A.2d 637 (1971)..............................................................................13

Roach v. Jurchak, 182 Md.646, 35 A.2d 817 (1944)..................................................................................................16

*Virginia v. Loving*, 388 U.S. 1 (1967) .......................................................................................................................12

Washington Mutual Bank v. Homan, No. 1586 (Sept. Term, 2008) Court of Special Appeals of Maryland.......17

*Wolf Organization, Inc. v. Oles*, 705 A.2d 40, 46, 119 Md. App. 357, 368 -9 (Md. App., 1997) .......................21

## STATUTES

"Premarital Agreement Act, "  Va. Code §§ 20-147, et seq .........................................................................................14

Va. Code § 20-150.........................................................................................................................................................14

Va. Code § 20-155.....................................................................................................................................................14, 15

## OTHER AUTHORITIES

Richard W. Bourne, *Modern Maryland Conflicts: Backing into the Twentieth Century one* Hauch *at a Time.* 23
    U. Balt. L. Rev., 71 (1993) .....................................................................................................................................16

Weitzman, *Legal Regulation of Marriage: Tradition and Change*, 62 Cal L. Rev 1169 (1974) .........................11

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

| | |
|---|---|
| In Re: | * |
| | * |
| **JAMES MICHAEL STEWART,** | *   **Bankruptcy Case No.: 07-10940 PM** |
| | *   **(Chapter 7)** |
| **Debtor.** | * |
| **STEVEN H. GREENFELD,** | * |
| **CHAPTER 7 TRUSTEE,** | * |
| | * |
| **Plaintiff,** | * |
| | *   **Bankruptcy** |
| **v.** | *   **Adv. Proc. No.: 09-0051-PM** |
| | * |
| **BRIAN J. BOWERS, et al.,** | * |
| **Defendants.** | *   **Dist. Ct. Case No. 8:09-cv-02199-MJG** |

## Statement of the basis of appellant jurisdiction.

This case is a core proceeding within the meaning of 28 U.S.C. § 157.  It concerns a matter of the administration of the bankruptcy estate, namely, the enforcement of a judgment owned by the estate and the enforcement of the judgment's lien on real property.  Jurisdiction is vested by virtue of the provisions of 28 U.S.C. § 158 (a)(1).

## Statement of issues on appeal.

The following statement of issues on appeal was filed on July 10, 2009.

> 1.      *Did the existence of (a) a martial/property settlement agreement[1], (b) the acquisition pursuant to that agreement of certain marital property[2] (the "Fairfax property") solely by the wife, and (c) the later granting of a power of attorney (in this case) from the wife to the husband allowing him to convey other marital property[3] (the "Ocean City" property), result in a transfer (i.e., an equitable conversation) of the Ocean City property from (a)*

---

[1] Specifically, a Custody, Support and Separation Property Settlement Agreement dated September 26, 2003.
[2] Namely, a martial home in Fairfax County, Virginia, previously held as *tenants by the entireties*.
[3] Namely, property at Ocean City, MD located at 14 24th Street, Unit 0014, Ocean City Maryland 21842)

*an estate held by the spouses as a tenancy by the entireties to (b) an equitable estate held solely by the husband?*

> *The trial court was silent as to this issue, but by its order of dismissal under Rule 12(b)(6) the trial court effectively answered this question:  "No." Appellant contends the answer should be:    "Yes."*

STANDARD OF APPELLATE REVIEW: On the Record.

2.       *In determining interests in property acquired by a party (in this case, the husband) to a written Virginia martial agreement (that stated "... in the event the parties reconcile ... they shall continue to be bound by all the terms and conditions of this Agreement ...[4]"), can a trial court disregard such an agreement's provisions on a hypothetical basis that "the parties could have [later] reconciled"?*

> *Trial court answered this question:           "Yes."*
> *Appellant contends the answer should be:     "No."*

STANDARD OF APPELLATE REVIEW: On the Record.

3.       *Can the trial court properly enter an order of dismissal pursuant to Rule 12(b)(6) (failure to state a cause of action) when the Plaintiff has alleged, inter alia, (a) it is owner of a judgment and a resulting judgment lien[5], on real property[6] (b) the judgment debtor conveyed the property to his sister and brother-in-law[7], (c) the sister and brother-in-land were not bona fide purchasers for value, and (4) thereafter the judgment debtor had an interest (an option to repurchase) in real property in his own name[8].*

> *Trial court answered this question:           "Yes."*
> *Appellant contends the answer should be:     "No."*

STANDARD OF APPELLATE REVIEW: On the Record.

4.       *Despite the Plaintiff's filing of an affidavit under Rule 56(f), can the trial court conclude, as a matter of law,*

---

[4] Custody, Support and Separation Property Settlement Agreement dated September 26, 2003, at p.17, ¶ 31.
[5] Amended Complaint, ¶¶ 1, 8, and 9.
[6] Id. ¶ 7.
[7] Id. ¶¶ 15 and 16.
[8] Id. ¶ 24.

*that "The parties (to their settlement agreement) did not
agree to change the status of the Subject property ..."
notwithstanding that Plaintiff's complaint alleges that the
written agreement provided that the judgment debtor
would, unconditionally, acquire ownership absolutely to
the Subject property.*

| | |
|---|---|
| *Trial court answered this question:* | *"Yes."* |
| *Appellant contends the answer should be:* | *"No."* |

Note: Because the Rule 12(b)(6) order indicated that the
order is based entirely upon the Plaintiff's complaint (and
no other facts were considered by the court in its ruling), a
consideration at this time of factual assertions contained in
the filed Rule 56(f) affidavit may be premature.

STANDARD OF APPELLATE REVIEW: On the Record.

## Statement of the Case

This appeal involves almost exclusively issues of non-bankruptcy law.

By the commencement of the underlying bankruptcy case in 2007 the

Plaintiff/Appellant bankruptcy trustee acquired ownership of a judgment that had been

docketed in 2000 in Worcester County, Maryland.  At the time of docketing the judgment,

the judgment debtor and his then wife, owned, as tenants by the entireties, a condominium in

Ocean City, Maryland.  In 2003, the debtor and his wife executed and delivered a property

settlement agreement giving equitable ownership of the condominium to the debtor.  In 2004

the debtor signed a deed transferring legal title to his sister and brother-in law (the present

defendants).  As a part of that transfer, he then acquired a contract right to have the property

conveyed back to him.

The instant suit, a creditor's bill, followed seeking enforcement of the judgment lien.

Rule 12(b)(6) motions were filed.  The bankruptcy judge determined that the 2003 property

settlement agreement did not transfer equitable title from the *entireties* estate to the debtor.

and that the debtor's rights to have the property re-titled in his name did not gave the trustee any rights or interests in the condominium in Ocean City, Maryland.

An order of dismissal was entered.

From that order, this appeal has been taken.

## Facts[9]

On July 21, 1998, Michael O'Connor ("Michael," the judgment debtor in this case), and his wife, Karen O'Connor (Karen), as tenants by the entireties, acquired ownership of a condominium in Ocean City, Worcester County, Maryland.[10]  This is sometimes referred to as "the Subject Property."  In addition to that property they also owned, as tenants by the entireties, their marital home in Fairfax County, Virginia.

On December 1, 2000, a judgment in excess of $400,000 against Michael O'Connor was docketed in Worcester County, Maryland.[11]  The judgment creditor was James Stewart[12].

On September 26, 2003, Michael and Karen, consonant with the provisions of Virginia law, signed[13] a marital separation agreement providing, among other things the following immediate rights to each of the parties:

1.      Their two parcels of real property were immediately divided as follows:

- Their entireties estate in their house in Fairfax County, Virginia was extinguished with ownership being transferred to Karen.

---

[9] Because this case involves a dismissal under Rule 12(b)(6), a failure to state a cause of action, for the purposes of this statement of Facts, the allegations of Plaintiff's complaint will be presumed to be true.
[10] (Amended) Complaint, ¶7.
[11] Id. ¶ 9.
[12] The bankruptcy debtor in the main case, No. 07-10940-PM ( Bankr. D. Md.)
[13] (Amended) Complaint, ¶ 11.  Note: Karen's provided an acknowledgment to her signature on October 17, 2003.

- Their entireties estate in their condominium in Ocean City (Worcester County), Maryland, (the Subject Property) was extinguished with ownership being transferred to Michael.

2. If the parties should reconcile, the agreement would not be revoked,[14]and

3. The agreement would be subject to the laws of Virginia.[15]

On December 2, 2003, Karen and Michael executed a deed transferring legal title to the Fairfax County, Virginia property to Karen[16].  Although Michael already had an absolute vested equitable ownership of the Ocean City property, on October 5, 2004, Karen gave a power of attorney allowing Michael to transfer title for the condominium to his sister and brother-in-law,[17] Patricia L.Bowers and Brian J. Bowers ("the Bowers," the Defendants in this adversary proceeding).

Armed with this power of attorney, and in an possible attempt to try to evade the lien of the judgment, on October 8, 2004 Michael signed a deed transferring legal title of his condominium to the Bowers.[18]  Additionally, as part of an agreement he had with the Bowers, Michael acquired a right to have the same property re-conveyed to himself.[19]

The Bowers were not bona-fide purchasers.[20]  The state of the recorded chain of title was irrelevant as their ability to acquire the property free from the judgment lien.

On January 30, 2007, James Stewart, the bankruptcy debtor herein filed his Chapter 7 petition.[21]  His judgment against Michael became property of the bankruptcy estate.  On

---

[14] Id. ¶ 11, Exhibit 1, ¶ 31.

[15] Id. ¶ 24

[16] Id. ¶ 13, Exhibit 2.

[17] Id. ¶ 14, Exhibit 3.

[18] Id. ¶ 15, Exhibit 4.

[19] Id. ¶ 24.

[20] Id. ¶ 18.

January 29, 2009, this adversary action was filed, seeking, *inter alia¸* relief in the nature of a creditor's bill for enforcement of the judgment lien that had attached to Michael's Ocean City condominium.

Two Rule 12(b)(6) motions were filed, the last on July 7, 2009.  A hearing was held on July 16, 2009.  On July 23, 2009, the bankruptcy judge indicated that he would not consider as an equitable transfer of title Karen and Michael's written 2003 marital agreement q   because of a hypothetical possibility that they might have later "reconciled"[22]. Additionally the judge also did not determine Michael's right to repurchase the property from the Bowers as an interest that the trustee could attach.

The judge's order of dismissal was filed on July 23, 2009.[23]

On July 30, 2009, a notice of appeal was filed.

# Argument

In this appeal the court must consider the following items:

A.  The law regarding dismissals under Rule 12(b)(6).

B.  Property rights that emanate from the judgment debtor's Virginia marital property settlement agreement when that agreement affects property located in Maryland.

C.  The law of equitable conversion.

D.  The effect and extent of the force of Plaintiff's docketed Maryland judgment lien upon equitable interests in real property located in Maryland.

---

[21] In re: James Michael Stewart, Case No 07-10940-PM (Bankr. D. Md.), filed January 30, 2007.
[22] Memorandum of Decision, Doc. No. 35, filed July 23, 2009.
[23] Order on Motion to Dismiss, Doc. No. 36, filed July 23, 2009.

**A.  The applicable standard in this case for the granting a dismissal under Rule 12(b)(6).**

The law has been stated in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that, "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief."

In *Ashcroft v. Iqbal*, 556 U.S. _____, 129 S.Ct. 1937, 1959, 137 L.Ed.2d 868, 985 (2009) the court reiterated that "a court must take the allegations as true, no matter how skeptical the court may be" and "Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations."

**B. The effect of the judgment debtor's Virginia martial property settlement agreement on real property located in Maryland.**

A copy of the judgment debtor's property settlement agreement was attached to the complaint that was before the bankruptcy judge.  The bankruptcy judge indicated that he could disregard provisions of Michael's and Karen's Virginia property settlement (affecting, *inter alia*, their Maryland real estate) because of a possibility that the parties could have later *reconciled*.

This Virginia agreement affected real property in Maryland.  However, no material conflict of laws issue exists because both Maryland and Virginia law provides the same result.  Under the laws of either state, the agreement was, at all times, fully enforceable.

A review of the law of martial agreements is instructive.

Throughout the nineteenth and into the early twentieth century, marital agreements purporting to address the financial consequences of divorce, traditionally, were not enforced. The justification for this traditional rule has never been clear.  Some courts apparently

believed that such "divorce agreements" encouraged divorce.[24]  Moreover, this belief

apparently arose because divorce agreements frequently limited the rights of the wife.  If the

terms were enforced, the courts reasoned, husbands would have an economic incentive to

divorce.  The "incentive" apparently was the ability to terminate, via divorce, the spousal

obligation of support.[25]

     Since that time, writers such as as Oldham[26] have indicated that certain societal

changes have completely undermined the traditional view of non-enforceability of martial or

separation agreements.  Others concur[27] and support the conclusion that our society has

undergone profound transformations in the past century[28].  The traditional legal conception

of marriage has been challenged, and by the last third of the twentieth century these

challenges have been recognized in both the state and in the federal courts.[29]

     Equitable distribution systems and the increasing divorce rate have made prospective

spouses aware of the possibility of divorce.  Judges, in jurisdictions where they are still given

discretion to do so, generally have now become more willing to enforce such agreements.

This is so, in part, because a large percentage of women now work outside of the home.

---

[24] J. Thomas Oldham, *Divorce, Separation and the Distribution of Property*, § 4.02 "The Traditional Rule of Nonenforceability.

[25] Id.

[26] Id.

[27] In discussing the forces for changes causing an abandonment of the traditional non-enforceable rule, was the erosion of the presumptions underlying the basic marriage contract.  The older traditional legal view of marriage was outlined by Weitzman, *Legal Regulation of Marriage: Tradition and Change*, 62 Cal L. Rev 1169 (1974) as:

     A.   The Husband Is Head of the Family
     B.   The Husband Is Responsible for Support
     C.   The Wife Is Responsible for Domestic and Child-Care Services
     D.   The Marriage Contract Assumes a Lifelong Commitment
     E.   The Marriage Contract Assumes a First Marriage
     F.   The Marriage Contract Assumes Procreation Is an Essential Element in the Relationship
     G.   The Marriage Contract Assumes a Strict Division of Labor in the Family
     H.   The Marriage Contract Assumes a White, Middle-Class Family
     I.   The Marriage Contract Assumes the Judeo- Christian Ideal of a Monogamous Heterosexual Union

[28] Id.

[29] *See*, beginning with, *Griswold v. Connecticut*, 381 U.S. 479 (1965), and *Virginia v. Loving*, 388 U.S. 1 (1967)

Judges are now less inclined to perceive that women, as a rule, need special protection against their own agreements.  Finally, in today's society, if enforceable martial agreements were not to be allowed that, in reality, would an incentive not to marry in the first place.

Maryland has clearly rejected the traditional view of non-enforceability of such agreements.  Herget v. Herget, 77 Md. App. 268, 550 A.2d 382 (1988) provides a discussion of marital agreements.

> In determining validity of an antenuptial agreement in anticipation of divorce, the Court in Frey v. Frey, supra, 298 Md. at 563-64, 471 A.2d 705 instructed:

> The agreements are not to be rejected automatically as contrary to public policy; rather, the question is the validity of the agreements. All such antenuptial agreements, therefore, are to be evaluated upon the factors indicated in Hartz v. Hartz, 248 Md. 47, 234 A.2d 865 (1967). [550 A.2d 385] The agreement must be fair and equitable in procurement and result. Id. at 57, 234 A.2d at 871. The parties must make frank, full and truthful disclosure of all their assets. Id. The agreement must be "entered into voluntarily, freely and with full knowledge of its meaning and effect." Id. Further, we have emphasized the importance of independent legal advice in evaluating whether the agreement was voluntarily and understandingly made. Id. Also, in evaluating the disclosure and procurement of the agreement, the trial judge must remember that the parties stand in a confidential relationship. Id. at 56, 234 A.2d at 870; see also Levy v. Sherman, 185 Md. at 67-72, 43 A.2d at 27-29 (1945).

> The real test in a determination of the validity of an antenuptial agreement is whether there was overreaching, that is, whether in the atmosphere and environment of the confidential relationship there was unfairness or inequity in the result of the agreement or in its procurement. Frank, full and truthful disclosure of what is being relinquished (or in lieu thereof actual knowledge otherwise available or obtained) is the key that turns the lock of the door leading to impregnable validity.  Hartz, 248 Md. at 57, 234 A.2d at 871 (footnote omitted).

The rationale of this discussion, while directly concerning a pre-marital agreement, clearly applies to martial agreements entered into by parties after their marriage.  Since 1984, Md. Family Law, Code Ann. § 8-101 (1984 Md. Laws ch. 296 § 2) specifically provides:

§ 8-101. Deeds, agreements, and settlements valid
(a) Deed or agreement. -- A husband and wife may make a valid and enforceable deed or agreement that relates to alimony, support, property rights, or personal rights.
(b) Settlement. -- A husband and wife may make a valid and enforceable settlement of alimony, support, property rights or personal rights.

In subsequent sections of the law, the Maryland Family Law describes factual circumstances when the courts may look beyond the literal provisions of an agreement between a husband and wife.  However, absent such factual circumstances, the law in Maryland has long been established that a separation agreement is subject to the same general rules governing other contracts.  In, Pumphrey v. Pumphrey, 11 Md. App. 287; 273 A.2d 637 (1971), the court stated:

> A separation agreement being a contract between the parties is subject to the same general rules governing other contracts, and particular questions must be resolved by reference to the particular language of the agreement. *Heinmuller v. Heinmuller*, 257 Md. 672, 676. Thus, where a contract is plain as to its meaning, there is no room for construction and it must be presumed that the parties meant what they expressed.  *Devereux v. Berger*, 253 Md. 264. In considering the applicability of this rule, "[w]ords will be given their ordinary meaning when nothing appears to show that they are used in a different sense, and no unreasonable or absurd consequences will result from doing so.  Words chosen by the contracting parties should not be unnaturally forced beyond their ordinary meaning, or given a curious, hidden sense which nothing but the exigency of a hard case and the ingenuity of a trained and acute mind can discover." *Highley v. Phillips*, 176 Md. 463, 471-472.

If Maryland law is to be applied to the separation agreement between Michael and Karen, then it is absolutely clear that, upon its being signed, the parties intended that Karen would immediately get their Fairfax County, Virginia, house and Michael would get their Ocean City, Maryland property.

13

Construing the language of their agreement most favorably to the Plaintiff, upon the signing of their agreement (and not the signing of any later deed), the equitable rights of each of them vested as to each respective real estate parcel.

Following the requirements of *Herget*, nothing whatsoever in the Plaintiff's complaint indicates any basis under Maryland law to disregard the force of Michael's and Karen's agreement.  The hypothetical possibility of a subsequent reconciliation is not a basis to disregard an agreement's provisions.  The court cannot infer facts to justify a dismissal under Rule 12(b)(6).

Whether the judge intended to apply either Maryland law or Virginia law in his analysis of their agreement is unknown.  However, if he did apply Virginia law Rule 12(b)(6) dismissal would likewise be erroneous.

In Virginia, the rejection of the traditional non-enforceability view of property settlement agreements has been addressed by statute.  Effective July 1, 1986, Virginia adopted its "Premarital Agreement Act, "  Va. Code §§ 20-147, et seq.  Despite its name, effective July 1, 1987, the Act specifically includes both agreements made before marriage, as well as agreements made after marriage (equating an agreement between married persons the same as a pre-marital agreement).  Va. Code § 20-155.

The act includes a detailed provision, Va. Code § 20-150:

Parties to a premarital agreement may contract with respect to:

1. The rights and obligations of each of the parties in any of the property of either or both of them whenever and wherever acquired or located;

2. The right to buy, sell, use, transfer, exchange, abandon, lease, consume, expend, assign, create a security interest in, mortgage, encumber, dispose of, or otherwise manage and control property;

3. The disposition of property upon separation, marital dissolution, death, or the occurrence or nonoccurrence of any other event;

4. Spousal support;

5. The making of a will, trust, or other arrangement to carry out the provisions of the agreement;

6. The ownership rights in and disposition of the death benefit from a life insurance policy;

7. The choice of law governing the construction of the agreement; and

8. Any other matter, including their personal rights and obligations, not in violation of public policy or a statute imposing a criminal penalty.

Virginia law specifically addresses reconciliation. Effective July 1, 1998, language was added to the statute indicating the circumstances where reconciliation between the parties would nullify the agreement.  In the instance of an agreement between married persons, the Virginia act, Va. Code § 20-155, explicitly provides:

> A reconciliation of the parties after the signing of a separation or property settlement agreement shall abrogate such agreement *unless otherwise expressly set forth in the agreement*. (emphasis supplied)

Under Virginia law, whether Michael and Karen could or even did reconcile after they signed their agreement is irrelevant.  In the case now at bar, in their agreement, Michael and Karen deliberately invoked the benefits of this Virginia statutory provision.  They specified that if they should reconcile, their agreement *would not* thereby be revoked.[30]

Merely observing that "the parties could have reconciled"[31] is not, a basis to reject the effects of their agreement.

For this reason, the Appellant's answer to the second issue on appeal (the court's ability to disregard Michael's and Karen's martial separate agreement), as "No" should be sustained as a correct resolution of that issue on appeal, and the Rule 12(b)(6) order of dismissal should be set aside.

### C. The Law of Equitable Rights.

The effect of Karen and Michael's martial agreement is central to the rights of the bankruptcy trustee. The complaint is based upon the fact that Michael, acquired his ownership of the Subject Property as a result of the equitable conversion flowing from his written agreement with his wife, Karen. That agreement was signed by both of them. It addressed, specifically, the change of ownership of two properties that until then had been titled as tenants by the entireties.

The concept of equitable ownership is germane.

In Maryland, the principle of the common law applies that the transfer of real estate is governed by the law of where the real estate is situated. Roach v. Jurchak, 182 Md.646, 35 A.2d 817 (1944). See, also, Richard W. Bourne, *Modern Maryland Conflicts: Backing into the Twentieth Century one* Hauch *at a Time.* 23 U. Balt. L. Rev., 71 (1993).

Maryland has consistently recognized the applicability of the doctrine equitable conversion. Himmighoefer v. Medallion Industries, Inc., 487 A.2d 282, 302 Md. 270, 272 (Md., 1984) states the law at page 272:

> Appellants here acquired equitable title once they contracted with Ridgely to buy the lots in question. The doctrine of equitable conversion is explained in 8A Thompson, Real Property, § 4447 (Grimes Replacement Volume 1963):
>
> "The legal cliche, that equity treats that as being done which should be done, is the basis of the theory of equitable conversion. Hence, when the vendee contracts to buy and the vendor to sell, though legal title has not yet passed, in equity the vendee becomes the owner of the land, the vendor of the purchase money. In equity the vendee has a real interest and the vendor a personal interest. Equity treats the executory contract as a conversion, whereby an equitable interest in the land is secured to the purchaser for whom the vendor holds the legal title in trust. This is the doctrine of equitable conversion." Id. at 273-74, 377 A.2d 523.

Watson v. Watson, 497 A.2d 794, 800, 304 Md. 48, 60 (Md., 1984) again restated the law:

---

[30] Id. ¶ 11, Exhibit 1, ¶ 31.

This Court has repeatedly held that the contract purchaser of realty becomes the equitable owner of the property, while the vendor retains a bare legal title.

And as recently as of June of 2009, it was stated: "[u]nder the doctrine of equitable conversion, a purchaser of land under a sales contract acquires equitable title to the property." Washington Mutual Bank v. Homan, No. 1586 (Sept. Term, 2008) Court of Special Appeals of Maryland.

Karen's and Michael's martial agreement indicates that both their agreement and their subsequent actions (full performance by Karen and Michael in Michael's gave absolute title to Karen of the Fairfax property) and absolutely vested in Michael equitable title to the Subject Property. This vesting occurred long before a deed was given to his sister and brother-in-law (the Bowers).

Could their agreement have been construed to reach a conclusion that they intended to treat their Fairfax property and Ocean City property on a piecemeal basis, terminating the entireties estate in the Fairfax property, but equitably retaining an entireties estate in the Ocean City property? At most, the agreement is silent on that question, leaving open for the consideration of additional facts -- and making a Rule 12(b)(6) dismissal at that state of the proceedings a clear error. But, further, the agreement, on its face, has evidence that a piecemeal conversion of equitable ownership interests was not their intent -- simply because the language affecting the termination of an entireties estate on the respective parcels are in the same, single, paragraph[32]. Even if piecemeal conversion were to be considered, the parties articulated a specific time limit ("6" months) for addressing possible title issues on

---

[31] July 23, 2009 opinion, Doc. 35, filed July 23, 2009 at page 3 of 4.
[32] Complaint, Exhibit 1, Doc 1-1, filed 1/28/2009 at pages 6 of 22 through 8 of 22.

Michael's Ocean City property.  That time limit expired months before Michael's execution of a deed transferring title to the Bowers.

Viewing the allegations of the complaint most favorably to the Plaintiff, simultaneous equitable conversions (from an entireties estate to sole tenancies) must be presumed. Following the standard set by the court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957),  the Rule 12(b)(6) dismissal in this matter is a clear error.

As a caveat, the law is clear.  The actual execution of recordable deeds of transferring record title was immaterial to the vesting of equitable ownership of real estate.

Equitable transfer of ownership is a result of the intent of the parties.  That intent is ascertained by both their written agreement and their actions.

On a Rule 12(b)(6) motion, the judge can not infer contrary facts, and the judge's dismissal under that Rule was more clearly erroneous.

To better understand the nature of the error made by the bankruptcy judge in his ruling, it may be helpful to review the two cases cited in his opinion.  Neither case gives support for his action.

The first case is *Bruce v. Dyer*, 524 A.2d 777, 782-783 (Md. 1987). In that case the court was faced with a settlement agreement that provided that entireties property was to be sold and thereafter the proceeds would be split between the husband and wife.  Before the property was sold, the husband died, and a dispute arose as to whether the wife could take only a portion of the sale proceeds as described in the agreement or take 100% of the proceeds (being the surviving spouse).  The court did not address any issue of equitable conversion, but noted that the parties had, in fact, decided not to divide ownership of the property until *after* the property had been sold.  The property was never sold, thus neither a

purchaser nor a vendee ever came into existence.  Therefore, an equitable conversion did not occur.  As such, the entireties estate retained both equitable and legal ownership, leaving the surviving spouse with a 100% ownership of the property upon the death of the other spouse.

Clearly, *Bruce v. Dyer*, is the opposite of what was alleged in the complaint now at bar.  In *Bruce,* a sale was a condition precedent to a division of the property.  Here, no unfulfilled condition precedent existed delaying Michael's immediate and absolute equitable right to the ownership of the Subject Property.

The judge's ruling suggests that *Bruce* indicates a judicial abolishment of the doctrine of equitable conversion.  In no way does *Bruce* support such a suggestion.  If anything, *Bruce v. Dyer* supports a conclusion that the Karen and Michael's entireties estate was equitably converted.  The ruling of *Bruce* emphasizes that a condition precedent can impair the severance of an entireties estate, and, conversely, severance can occur when no condition precedent (e.g., a requirement for a "sale") exists.

The other case is *Jonas v. Logan*, 478 So.2d 410 (Fla.Dist.Ct.App. 1985).  The bankruptcy judge asserted in his opinion that *Jonas* had "much the same facts as presented here."  That assertion we submit is wrong.  *Jonas,* of course, is a classic case illustrating the courts' recognition of a principle of tenancy by the entireties.  That is, it "is a joint tenancy, modified by the theory of the common law that husband and wife are one person[33]."  More important, the fact pattern in *Jonas* is opposite from the fact pattern in this case.  *Jonas* involved the classic fact pattern where the indebted spouse participates in a conveyance of entireties owned property directly to the non-debtor spouse (with neither an equitable or legal title passing into the hands of the debtor spouse).

The underlying agreement in *Jonas* specifically stated:

> The Husband agrees to forthwith produce the deed on said marital home to the Wife and execute a Quit-Claim Deed to the Wife, thereby giving up any right, title or interest which he may claim in the said property within fourteen (14) days from the date of signing this Agreement.

The *Jonas* property settlement agreement did not convey property to the judgment debtor.  Clearly, *Jonas* is the opposite of the case now at bar.   Here, the *O'Connor* property settlement agreement did convey property *to* the judgment debtor.

We submit that the bankruptcy judge did not follow the precedent of the above two cases.  As a result, the judge's entry of an order of dismissal under Rule 12(b)(6) was an error.

Accordingly, the Appellant's answer to the first issue on appeal (did an equitable conversion of ownership of the Subject Property occur?), as "Yes" should be sustained as a correct resolution of that issue on appeal, and the Rule 12(b)(6) order of dismissal should be set aside.

### D. Judgment liens attaching to equitable interests.

Maryland law is equally as succinct that equitable interests in real estate are subject to judgment liens when the equitable owner is the judgment debtor.

> Generally, a judgment is a lien only against whatever interest and estate a debtor has in land when the judgment is obtained and recorded. Knell v. Green Street Bldg. Ass'n., 34 Md. 67, 70-72 (1871); Md.Code Ann., (1995 Repl.Vol.), § 11-402 of the Cts. & Jud. Proc. Article. A judgment debtor's equitable interest in real property may be subject to a judgment lien: "[E]quitable interests in lands are bound by judgments against the party having the equity." Hollida v. Shoop, 4 Md. 465, 475, 59 Am. Dec. 88 (1853); McMechen v. Marman, 8 Gill & J. 57 (1836). As such, a judgment against the purchaser of land is a lien on the purchaser's equitable interest in the land. Coombs v. Jordan, 3 Bland 284, 22 Am. Dec. 236 (1831).

---

[33] Tiffany Real Property, 3rd. Ed. (Abridged) § 195, Tenancy by entirety generally.

*Wolf Organization, Inc. v. Oles*, 705 A.2d 40, 46, 119 Md. App. 357, 368 -9 (Md. App., 1997).

The docketing of Plaintiff's judgment in Worcester County, Maryland, resulted in a judgment lien upon all then existing and after acquired property of the judgment debtor in that county.  As a matter of Maryland law, where Mr. O'Connor had acquired even equitable ownership to lands in that county, the lien would fully attach to that ownership.

Neither the court nor any of the parties challenge this as a correct statement of the law.

The bankruptcy court further erred by not considering Plaintiff's allegations (and independent of a claim of equitable conversion or a claim of equitable ownership by transfer of the Subject Property from Karen's and Michael's entireties estate), that Michael, by a separate agreement with the Defendants, acquired a contractual right to reacquire the Subject Property.  This contractual right, too, is a separate equitable interest in the Subject Property to which the Plaintiff's lien attached on October 8, 2004 (when a deed of conveyance was provided to the Defendants).

On this point, alone, the bankruptcy judge's Rule 12(b)(6) dismissal of the complaint was also erroneous.

Accordingly, the Appellant's answer to the third issue on appeal (the court's ability to disregard allegations of Mr. O'Connor's acquiring a contractual right [an option to repurchase in his own name]), as "No" should be sustained as a correct resolution of that issue on appeal, and the Rule 12(b)(6) order of dismissal should be set aside.

Finally, the judge's July 23, 2009 order specifically recognized the Plaintiff's filing of an affidavit of disputed facts consonant with the provisions of Rule 56(f), and indicated in his order that his order was being made strictly under the constraints of Rule 12(b)(6).  *A fortiori,* without even considering the possibility of additional facts, the judge below's dismissal was clearly erroneous.  Therefore, the factual disputes attendant to the Rule 56(f) affidavit need not be addressed here, and no specific ruling is therefore required in connection with the final issue designated for appeal.

## Conclusion

The district court should reverse the action of the bankruptcy court, and it should remand it with instructions to proceed on the basis that an order had been entered denying the movants' Rule 12(b)(6) motion(s).

Date September 8, 2009.

Respectfully submitted,

_/s/ Randall J. Borden

Randall J. Borden, Esq. Fed ID #013054
10627 Jones St, Suite 201A
Fairfax, VA 22030
Counsel for Steven H. Greenfeld,
Chapter 7 Trustee
703/385-8722; 703/273-8838 facsimile

On brief: Richard A. Golden, Esq.

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 8, 2009, I by ECF  to Richard L. Costella Miles & Stockbridge P.C. , 10 Light Street,  Baltimore, MD 21202,  Attorney for Appellees Brian J. Bowers and Patricia Bowers;  Bruce W. Henry, Henry & O'Donnell, P.C. ,  300 N. Washington Street, Suite 204, Alexandria, VA 22314, attorney for Appellee Michael

O'Connor; and mailed the foregoing sent the Brief of Appellant by U. S. mail, postage

prepaid to  Appellee Town of Ocean City, Maryland,  Serve: Richard W. Meehan, Mayor ,

301 Baltimore Avenue, Ocean City, MD 21842,  *Pro Se*; and Appellee Worcester County,

Maryland , Serve: Louise Gulyas, President, 3509 Coastal Highway, P.O. Box 739, Ocean

City, MD 21842,  *Pro Se*, (410) 632-1194


<u>/s/ Randall J. Borden</u>
Randall J. Borden, Esq.